UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHEENIX USH LLC, *d/b/a* SPIN,<br><br>    **Plaintiff,**<br><br>    v.<br><br>DISTRICT DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>    **Defendants.** | Civil Action No. 1:25-cv-00922-JMC |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

A company is not entitled to preliminary injunctive relief merely because it was not awarded the business opportunity it sought. Plaintiff—a disappointed bidder for a license to operate fleets of electronic scooters and bikes in the District—has failed to establish any of the requisite elements for such extraordinary relief. It alleges only economic or economic-adjacent injury, not the irreparable harm required to justify judicial intervention in any matter, let alone a procurement matter like this. Even if Plaintiff had pled and proved irreparable harm, its allegations cannot establish that it is substantially likely to win on the merits of any of its three claims. And the public interest and balance of the equities do not weigh in favor of tasking the Court with regulating how many electronic scooters or bikes are in the commercially shared fleets on the streets of the city of Washington. Defendants the District of Columbia Department of Transportation; the agency's director, Sharon Kershbaum; and four of its employees, Karen Calmeise, Ten Randell, William Feeney, and Aaron Goldbeck (collectively, the District) therefore request that the Court deny Plaintiff's motion.

BACKGROUND

I. **Permitting for Shared Fleet Devices**

On October 16, 2024, the District Department of Transportation (DDOT) announced the separate 2025-2026 permit application periods for shared electric mobility devices (dockless scooters) and shared electric bicycles, per the Shared Fleet Device Act and Title 24 of District Municipal Regulations (DCMR). The announcements invited questions, the answers to which were publicly posted. Ex. A [1-1] at 6.[1] Applications for each were due by November 1, 2024. *Id.*

The announcement set November 4, 2024, as the day for applicants to demonstrate that they had a working product. Compl. ¶ 31, Ex. A at 7. The demonstration had no effect on the relative scores of applicants. Ex. B [1-2] at 3 and 5 ("Demonstrations will not impact the final score of the application, but applications will be considered incomplete without a demonstration.") Plaintiff, one of the incumbent providers of dockless scooters and of shared electric bicycles, applied for each type of permit on October 31, 2024. Compl. ¶ 63.

On October 15, before the application announcement, Hopp by Bolt, one of the new applicants requested an extension for the demonstration "given international shipping and travel schedules." Opp'n Ex. D-1 at 5.[2] The District agreed to this reasonable request the same day. *Id.* at 4–5. No other applicant sought an exemption from the November 4 date or asked a question about that date. The District said it would not extend "the application deadlines,"

---

[1]   All citations are by ECF pagination, without regard to Plaintiff's internal numbering.

[2]   Opp'n Ex. D-1 is the same email thread as Compl. Ex. D but includes text lost to formatting errors in Plaintiff's version and is offered for clarity and ease of reference; this quotation, for example, can be found on Page 6 of Ex. D.

Compl. ¶ 33 and Ex. B at 3, but never said that the deadline for the demonstration, which came after the application was due, could not be extended.

The results were announced November 15, and Plaintiff appealed on November 27, 2024, amending its appeals on January 17, 2025. Compl. ¶¶ 64, 67, 74 and Ex. F [1-5] .

## II.    Plaintiff's Appeal of Its Scores

Plaintiff raised two principal arguments in its appeals: incorrect or improper scoring of Plaintiff's application and mistakes in calculating another applicant's score. Exs. F, H [1-8] and I [1-9] at 3. On December 16, 2024, DDOT met with Plaintiff to discuss its concerns. Compl. ¶ 44. On December 30, 2024, Plaintiff requested an evidentiary hearing. Ex. F. On January 27, 2025, DDOT responded to Plaintiff's appeals. On January 20, 2025, Ms. Calmeise, the Hearing Officer, wrote to explain why she was denying the requested hearing. Ex. G [1-6]. Ms. Calmeise issued her reports and recommendations that both appeals be denied on March 11, 2025. Exs. H and I.[3] On March 26, 2025, Director Kershbaum informed Plaintiff that the District was adopting both recommendations, denying Plaintiff's appeals, and requiring "all [Plaintiff's] devices . . . be removed from the public right of way within 72 hours of the date of th[e] letter." Ex. J [1-10]. On March 27, 2025, the District confirmed that it would not require Plaintiff to complete removal until April 9, 2025. Ex. K [1-11].

## III.   Procedural History of This Case

Plaintiff filed suit in this Court on March 28, 2025. Compl. The same day, Plaintiff moved for an administrative stay, temporary restraining order, and a preliminary injunction. Mot. [3]. In both, Plaintiff sought injunctive relief prohibiting the District from requiring it to remove its devices and from prohibiting it from doing business in the city during the pendency of

---

[3]    The reference to "March 10, 2025" in Exhibit I is the result of a typographical error.

this action or, ultimately, in 2025 or 2026, as well as a declaratory and other miscellaneous relief. Comp. at 21–22, Mot. at 2, 31–32. The Court held a hearing April 1, 2025, during which the District agreed that Plaintiff would not need to complete removal of its devices until April 25, 2025, to allow time for the Parties to fully brief the matter and for the Court to rule on Plaintiff's motion.

## STANDARD OF REVIEW

"The same standard applies to both temporary restraining orders and to preliminary injunctions." *Chapman v. Heath*, 288 F. Supp. 3d 215, 217 (D.D.C. 2018) (citation omitted). Each is "an extraordinary remedy . . . ." *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1337 (D.C. Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The moving party must make a clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quotation omitted), *reh'g denied* 910 F.3d 1248 (D.C. Cir. 2018). All four factors must be satisfied. *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013); *Winter*, 555 U.S. at 22. The latter two "merge into one factor when the government is the non-movant." *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 156 (D.D.C. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

I. **Plaintiff Has Not Adequately Alleged Irreparable Harm.**

Financial injury can only constitute irreparable harm when "the loss threatens the very existence of the movant's business." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Plaintiff has not alleged that being denied the right to operate in Washington will "forc[e] it to shutter its operations immediately." *Alpine Sec. Corp.*, 121 F.4th at 1329 (citing cases); *see*

4

*also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 805 (3d Cir. 1989) (Seitz, J., dissenting) (3rd Cir. finds no irreparable harm despite "unchallenged . . . [expected] loss of 80% of [plaintiff's] entire business"). Nor could it. Plaintiff is an objectively well-resourced international corporation operating "in cities and universities throughout the United States, Compl. ¶¶ 1–2.[4] There is no reason to suspect—and certainly no evidence before the Court—that Plaintiff's international enterprise will be threatened if it ceases operations in the District. Rather, "[Plaintiff] will undoubtably survive as a going business concern absent injunctive relief." *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 220 (D.D.C. 1996).

The D.C. Circuit long ago ruled that an agency action resulting in a carrier losing the ability to operate did not constitute irreparable harm because "revenues and customers lost to competition which can be regained through competition are not irreparable . . . ." *Cent. & S. Motor Freight Tariff Asso. v. United States*, 757 F.2d 301, 309 (D.C. Cir. 1985).

Plaintiff's economic-adjacent injuries are also inadequate. Plaintiff's speculative concern about a potential loss of equipment can be avoided by simply removing its scooters and bikes from the city's streets, and the District has already demonstrated a willingness to accommodate reasonable requests for additional time. *See EB5 Holdings, Inc. v. Jaddou*, 717 F. Supp. 3d 86, 94 (D.D.C. 2024) ("it is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted") (quotation omitted), Ex. K (granting a reprieve) and Background III (granting another).

---

[4] *See also Third Lane Mobility Achieves Milestone: $204 Million in Gross Bookings, Attains First-Ever Adjusted EBITDA Profitability, and is arranging up to $45 Million in Financing to Propel 2025 Expansion*, GLOBENEWSWIRE (Feb. 20, 2025) (describing parent company's extensive reach and resources), available at *https://www.globenewswire.com/news-release/2025/02/20/3030010/0/en/Third-Lane-Mobility-Achieves-Milestone-204-Million-in-Gross-Bookings-Attains-First-Ever-Adjusted-EBITDA-Profitability-and-is-arranging-up-to-45-Million-in-Financing-to-Propel-2025-.html* (last visited April 2, 2025).

To the extent Plaintiff attempts to allege reputational harm, Comp. ¶ 134 ("[its] customers would quickly download other providers' applications and delete [Plaintiff's] application, leading to permanent loss of customers"), or loss of "good will," Mot. at 29, it offers neither proof of any such "loss" nor any explanation as to why the alleged loss would necessarily be "permanent." *Id.* at 3. "[A]s with all other forms of irreparable harm, the showing of reputational harm must be concrete and corroborated, not merely speculative." *Trudeau v. FTC*, 384 F. Supp. 2d. 281, 297 (D.D.C. 2005) (citing *Bristol-Myers, supra*). Plaintiff has not even attempted to make such a showing.

The cases on which Plaintiff relies are inapposite and unhelpful to Plaintiff's cause. *See* Mot. at 29–30. In *T.I.M.E.-DC, Inc. v. I.A.M. Nat'l Pension Fund*, 597 F. Supp. 256 (D.D.C. 1984), the court discussed in *dicta* the plaintiff's challenges "rebuild[ing] its customer base," *id.* at 264, thereby referencing damage that was already done, rather than potential. The threatened damage the court considered was that defendant's withdrawal could send a "false signal that [plaintiff] had gone out of business," which is clearly not the case here. *Id.* at 265. Similarly inapposite, *Dunkin' Donuts Franchising, LLC v. 14th St. Eatery, Inc.*, 102 F. Supp. 3d 334 (D.D.C. 2015), turned on allegations of "trademark infringement [which] raises a presumption of irreparable harm . . . [because of the threatened] dilution of the distinctiveness of a trademark" and the irrevocable stigma it can create through lost "quality control" and "customer confusion." *Id.* at 338–39. *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73 (D.D.C. 2020), dealt with an even greater stigma and a complete ban from doing business within the United States. *Id.* at 77 (describing an executive order "identifying TikTok Inc. as a source of emerging threats given its foreign ownership"). *See also Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (finding irreparable injury from announcement "formally debarring a corporation from

government contract bidding" not merely from not awarding it a contract). *Giri v. Nat'l Bd. of Med. Examiners*, 718 F. Supp. 3d 30 (D.D.C. 2024) also turns on someone being forced out of an entire industry, not merely one market. *See id.* at 45 (finding irreparable harm because Giri would have been barred from any residency, not just a particular one).

Plaintiff's contention that it might "be forced to lay off numerous salaried employees," Mot. at 30, even if true, would not constitute an irreparable injury. "[A] rule that any monetary loss that might induce a party to lay off employees constitutes irreparable harm … would threaten to swallow the rule that monetary damages are not sufficient to support preliminary injunctive relief." *Facebook, Inc. v. Brandtotal Ltd.*, 499 F. Supp. 3d 720, 736 (N.D. Cal. 2020). And Plaintiff offers no evidence that it is true. How many employees might be subject to layoffs? What percentage would this constitute of Plaintiff's regional, national, or global workforce? What skillset do they possess that makes recruiting similarly situated employees in the future border on the impossible? In the minority of cases in which the possibility of lay offs has been found relevant to this inquiry, courts have demanded that the threat be both "certain and great," *U.S. Conference of Cath. Bishops v. Dep't of State*, Civil Action No. 25-5066, 2025 U.S. App. LEXIS 8140, *8 (D.C. Cir. Mar. 28, 2025), and that the loss be unexpected *Id.* at *9 (discussing the "abrupt manner and enormous scale"); *compare with Medicalincs, LLC v. Coordinating Ctr. for Home & Cmty. Care, Inc.*, 686 F. Supp. 3d 415, 423 (D. Md. 2023) (no irreparable harm because company was aware its business could end "should have structured its staffing in a way that accounted for this fact.").

In sum, "[i]rreparable harm must be both certain and great, and actual and not theoretical," *Citizens for Responsibility & Ethics v. FEC*, 904 F.3d 1014 (D.C. Cir. 2018), and Plaintiff bears the burden of proving injury that satisfies each prong of the standard. *Sierra Club*

*v. United States DOE*, 825 F. Supp. 2d 142, 152 (D.D.C. 2011). Plaintiff, however, has supplied no evidence that its alleged harms clear any one of them, so its motion should be denied.

II.    **Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits.**

Demonstrating a likelihood of success on the merits is a free-standing requirement for a preliminary injunction, *Sherley*, 644 F.3d at 393 (quotation omitted), and the D.C. Circuit has ruled that a failure to show a likelihood of success on the merits is sufficient to defeat a motion for a preliminary injunction. *See Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009). And mere likelihood of success is not enough. "In order to obtain a preliminary injunction, a party must show, among other things, a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quotation omitted).

The Complaint asserts three substantive claims.[5] The Court has original jurisdiction over only Counts II (due process) and III (equal protection), both of which fail on the merits, as explained in Subsections II.A. and B. Count I seeks judicial review of the denial of Plaintiff's applications—presumably under the District's Administrative Procedures Act (DCAPA), although Plaintiff does not cite it—but, because Plaintiff has not shown a substantial likelihood of prevailing on its federal claims, the Court need not consider Count I at all. And even if it does, Plaintiff has not demonstrated likelihood of success there. Furthermore, even if it had, awarding Plaintiff with injunctive relief would be improper under the circumstances. The Ohio ruling on which Plaintiff relies offers the same, not a contrary, conclusion.

---

[5]    Plaintiff's Counts IV and V are not counts but remedies. *See Steinberg v. Gray* 815 F. Supp. 2d 293, 303 n.9 (D.D.C. 2011) ("Injunctive relief is not a claim but a remedy"), *Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C. 2019) ("a count for declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the prayer for relief.") (quotation and alterations omitted from both).

A. **Plaintiff Cannot Succeed on Its Due Process Claim Because It Neither Lost a Protected Interest Nor Was Deprived of Process After the Challenged Agency Action.**

"[T]o assess whether the government has violated the Fifth Amendment's Due Process Clause, [courts] engage in a familiar two-part inquiry: [they] must determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs.*, 56 F.3d 1469, 1471 (D.C. Cir. 1995) (quotation omitted). A party has generally received due process if it "receive[d] notice and an opportunity to be heard before the Government deprives them of property." *Id.* (quotation omitted).

Plaintiff fails to state the property or protected interest it alleges is at issue. Plaintiff wrongly contends that the District's "decision to kick Spin out of the District's micromobility market deprived Spin of a liberty interest." Compl. ¶ 110. The law is clear that Plaintiff had no such interest. *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964) ("no citizen has a 'right,' in the sense of a legal right, to do business with the government.") Indeed, the very citation Plaintiff offers explains Plaintiff's error. *See* Compl. ¶ 110. The "private interest" in *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886 (1961), "most assuredly was not the right to follow a chosen trade or profession. [Plaintiff] remained entirely free to obtain employment [in the same business] or to get any other job, either with M & M or with any other employer. All that was denied her was the opportunity to work at one . . . specific [location]." Plaintiff here, similarly, was not debarred from doing business with or within the District, nor was any stigma placed upon it. *Compare Trifax*, 314 F.3d at 644 ("government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause."). In fact, Director Kershbaum went out of her way to make explicit that the District's "decision is only regarding the 2025-26 permit, and Spin

9

will be welcome to apply in any future permit application periods for the Shared Fleet Device Permit Program." Ex. J.

To the extent Plaintiff had a right at issue, it was "a disappointed bidder['s] right to a legally valid procurement process" and "a fair procurement . . . ." *Nat'l Mall Tours of Wash., Inc. v. United States DOI*, 862 F.3d 35 (D.C. Cir. 2017).[6] Plaintiff received this. It concedes that it applied for the permits under the same scoring rubric as all other applicants. See Subsection II.D below. When Plaintiff scored too low to receive a permit, it received notice of the fact and an explanation as to the District's reasons. *See* Exs. F, H–J. Plaintiff was allowed to protest this decision and the District explained its reasons for denying Plaintiff's appeals and evidentiary hearing request. Exs. H–J. Due Process requires nothing more.

Plaintiff has not shown any legal deficiency in these explanations meriting relief from this Court. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (due process may be satisfied by "an explanation of the . . . evidence, and an opportunity to" respond) and Subsection II.D. Neither in its request to Ms. Calmeise nor in its filings has Plaintiff cited any law or regulation requiring that there be an evidentiary hearing. *See* Ex. F, Compl. ¶¶ 69–73, 99, 120, Mot. at 27; *but see* Compl. ¶ 44 (noting Plaintiff received a "pre-conference hearing" with DDOT). There is none because the Supreme Court has long recognized "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing . . . ." *Mathews v. Eldridge*, 424 U.S. 319 (1976); *followed in Richard Milburn Pub. Charter Alt. High Sch. v. Cafritz*, 798 A.2d 531, 547 (D.C.

---

[6] Vendors objecting to the awarding of limited permits allowing vendors to serve customers are considered bid protestors of "government procurement practices" subject to applicable procurement law. *See, e.g.*, *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 96, 98 (D.C. Cir. 1986); *Pheenix USH LLC v. City of Columbus,* No. 2:24CV04290, ECF 16, at 15 (S.D. Ohio Dec. 31, 2024) [3-1] at 1 ("This is a disappointed bidder case.").

2002). *See also Blumenthal v. FERC*, 613 F.3d 1142 (D.C. Cir. 2010) (rejecting the idea that "an *in-person evidentiary* hearing is constitutionally required") (italics original)).

Furthermore, Plaintiff's due process claim is fatally damaged by its failure to bring that claim in Superior Court. *See Chavis v. Garrett*, 419 F. Supp. 3d 24, 38 (D.D.C. 2019) ("Because Ms. Chavis has not alleged that she availed herself of available procedures under District of Columbia law, she cannot plausibly state a claim under § 1983 for violation of her due process rights."). The DCAPA established a process for contesting such agencies actions. See Subsection II.D. "These procedures afforded plaintiff all the process [it] was due under the Due Process Clause of the Fifth Amendment of the Constitution. Plaintiff's choice not to pursue these matters in a D.C. court means plaintiff cannot support a claim for a violation of procedural due process." *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 284 (D.D.C. 2007).

Ms. Calmeise correctly rejected Plaintiff's challenge to the score of Hopp, so this was not a violation of due process. Plaintiff's allegation, in its appeal and here, is that the District should not have allowed Hopp to compete because it did not demonstrate its product on November 4. Mot. at 13. Plaintiff does not allege that the District "made a mistake in analyzing or calculating an applicant's final score (or a component thereof)," but that it made a deliberate choice. Such choices can be properly challenged in Superior Court, see Subsection II.C, but, as Ms. Calmeise explained, not in an "Application Under 24 DCMR §3317." *See* Exs. H and I at 4, 9.

**B.   Plaintiff Cannot Succeed on Its Equal Protection Claim Because Its Sole Allegation of Disparate Treatment was of Disparately Situated Applicants and Done For a Rational Reason.**

Plaintiff has "failed to make a sufficient showing regarding two essential elements of its 'class of one' equal protection claim: (1) disparate treatment of similarly situated parties (2) on no rational basis." *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003). First, Plaintiff has not only not shown that it was treated differently than similarly

situated parties, it alleges that it was treated the same as all other parties except one. Even if the District scored applications based on criteria different from the published rubric—which it did not, *see* Section II.D—Plaintiff does not allege that the District did anything but apply that criteria equally to all applicants. *See*, *e.g.,* Mot. at 7, 15–19. One applicant asked for and received an extension, *id.* at 6–7, *before* the demonstration date was even set, *see* Background Section I. Plaintiff offers no citation in support of its contention that "Failure to complete the in-person demonstration *on November 4* would result in disqualification of an applicant's score." Compl. ¶¶ 31 (italics added), 41, 89, 90, 114. Plaintiff does not allege that any other applicant sought an extension and was denied or that its other competitors also received the extension and only Plaintiff was treated differently. Thus, even if the parties *were* treated differently it was only due to their difference in situation, and there was a rational basis—*see* Ex. D-1 at 5 (citing "international shipping and travel schedules")—for that difference treatment.

Some degree of preferential treatment is also allowed, and inadequate to support an equal protection claim. *See Willie McCormick & Assocs. v. City of Detroit*, 61 F. App'x 953, 957 (6th Cir. 2003) (affirming dismissal of equal protection claim because "[e]ven if we were to accept the plaintiff's allegations of preferential treatment," including that a company was allowed to bid despite having "failed to comply with the instructions" or be disqualified as a result, that would be inadequate basis). The government is allowed to consider whether a given company presents a better solution to its population. "[T]here is nothing unusual or untoward in local government officials' responsiveness to public opinion." *3883 Conn.*, 336 F.3d at 1075 (affirming dismissal of equal protection claim when allegation was prejudice against the company). And the government may "grant exceptions to its rules" because there is longstanding "precedent recognizing that any rule of general applicability will involve particular cases of hardship, for

12

which an agency would be empowered to make individual dispensations." *Orange Park Fla. T.V., Inc. v. FCC*, 811 F.2d 664, 674 (D.C. Cir. 1987) (quotation omitted).

### C. The Court Need Not—Indeed Should Not—Exercise Supplemental Jurisdiction Over Plaintiff's Local Law Claim.

The D.C. Circuit "discourages courts in this District from exercising supplemental jurisdiction over claims challenging administrative decisions by the District of Columbia." *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 252 (D.D.C. 2013) (citing *Lightfoot v. District of Columbia*, 448 F.3d 392, 399 (D.C. Cir. 2006) (calling for dismissal of DCAPA claims if "there are no longer any viable federal claims in [the] suit.")). This is because such claims are "more properly decided in the first instance by the local courts of the District of Columbia." *Robinson v. Palmer*, 841 F.2d 1151, 1157 (D.C. Cir. 1988) (quotation omitted). A party "aggrieved" by a decision of a District agency should initiate an appropriate action in Superior Court. *District of Columbia. v. Grp. Ins. Admin.*, 633 A.2d 2, 14 (D.C. 1993) ("Because a bid protest is not a contested case within the meaning of the DCAPA, a disappointed bidder seeking relief from a decision on a bid protest … must resort in the first instance to the Superior Court."); *see also* D.C. Code § 11-921(a)(6) (Superior Court "has jurisdiction … of any civil action or other matter, at law or in equity, brought in the District of Columbia.").

The only exception is that D.C. Code § 2-510 gives the D.C. Court of Appeals jurisdiction for a "contested case." A contested case is a "(1) a controversy involving a trial-type hearing that is required by the agency's enabling statute, its implementing regulations, or constitutional right, and (2) which is an adjudicative, as opposed to a legislative, determination." *R.O. v. Dep't of Youth Rehab. Servs.*, 199 A.3d 1160, 1164 (D.C. 2019) (internal citations omitted). "A contested case hearing is understood to mean a trial-type hearing, which is implicitly required by either the organic act or constitutional right." *Richard Milburn Pub.*

13

*Charter Alt. High Sch. v. Cafritz*, 798 A.2d 531, 538 (D.C. 2002). Regardless of which local forum is appropriate, Plaintiff has a local avenues for pursuing its local claims; this Court should not exercise supplemental jurisdiction over them.

> **D.    Plaintiff Has Not Alleged a Violation of the DCAPA, Even If the Rules of the Application Had Been Changed.**

Under the DCAPA, whether in the Court of Appeals for a contested case or in Superior Court, courts "affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *R.O.*, 199 A.3d at 1166-1167. Here, Ms. Calmeise's reports each laid out her findings of fact, offered evidence to support them, and Plaintiff has shown no logical flaw in them. *See* Exs. H and I.

It is immaterial how many pages Plaintiff has dedicated to parsing the significance of language differences between the published scoring rubric and the District's internal discussion of it. *See* Mot. at 21. Length does not indicate the strength of an argument or require an equally lengthy refutation. *GTEC Indus. v. Guzman*, Civil Action No. 1:19-cv-01030 (CJN), 2022 U.S. Dist. LEXIS 146532, *10 (D.D.C. Aug. 16, 2022). Nor should a court credit a challenge to an agency's decision merely because the agency "could have explained its reasons for rejecting [plaintiff's] arguments in more detail . . . ." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Both Calmeise reports were explicit: after reviewing the different texts, Ms. Calmeise found "the email language regarding the application score criteria, does not significantly differ from the language presented in the application instructions which was shared with all of the applicants." Exs. H and I at 6.

Furthermore, even if the District *had* changed the scoring rubric, Plaintiff would still not have stated adequate grounds for a DCAPA claim. "[A]n agency must be allowed to adjust its

policies to changing circumstances, within the framework of rules it established in advance . . . ." *U.S. Airwaves, Inc. v. FCC*, 232 F.3d 227, 235 (D.C. Cir. 2000).  Plaintiff does not allege that some applicants were not subject to the scoring rubric under which Plaintiff was scored.  Thus, there is neither an allegation of unequal treatment nor of any other violation of law.

E. **Even If Plaintiff's Allegations Were All Correct, Injunctive Relief Would Be Improper.**

Under longstanding precedent, the D.C. Circuit has held that even after a finding of arbitrary and capricious activity in procurement, "there is room for sound judicial discretion, in the presence of overriding public interest considerations, to refuse to entertain declaratory or injunctive actions in a pre-procurement context."  *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1970).  The Federal Circuit—to which even the Supreme Court looks for guidance on certain legal issues, *see United States v. Fausto*, 484 U.S. 439, 464 N.11 (1988) (Stevens, J., dissenting) ("Because of the unique character of the Federal Circuit, its conclusions are entitled to special deference by this Court.")—recently affirmed this position in a post-procurement context.  *See Sys. Stud. & Simulation v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021) (affirming denial of injunctive relief even after finding of irrationality in procurement action).  Like the D.C. Circuit, the D.C. Court of Appeals has long applied *M. Steinthal* when deciding whether a permit to operate was legally denied, even to an incumbent operator.  *Grp. Ins. Admin.*, 633 A.2d at 22 (applying *M. Steinthal* to D.C. contracting and holding issuance of injunction to prevent contracting with new vendor over incumbent GIA was abuse of discretion). *See also Wash. Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F. Supp. 877, 882-883 (D.D.C. 1992) (applying *M. Steinthal* to a permitting situation).

Because proving its claims would not entitle Plaintiff to the relief it seeks, it cannot be found that Plaintiff has proven a likelihood of success on the merits, let alone "a substantial

likelihood . . . ." *Food & Water Watch*, 808 F.3d at 913. *See also Heart 6 Ranch, LLC v. Bernhardt*, 365 F. Supp. 3d 105, 116 (D.D.C. 2019) ("even if Plaintiff had prevailed on the merits of its motion for summary judgment, the Court would not have exercised its discretion to grant Plaintiff's requests for injunctive relief.").

### F. Plaintiff Mistakenly Relies on an Irrelevant and Inapposite Ohio Ruling.

Plaintiff's reliance on *Pheenix USH LLC v. City of Columbus*, [3-1] Civil Action No. 2:24CV04290, ECF 16, at 15 (S.D. Ohio Dec. 31, 2024), is misplaced given the differences between the situations. Rather than being "remarkably similar," Compl. at 30, the *Columbus* court based its finding of irreparable harm on "state and local law governing competitive bids," *Columbus* at 9, and disparate facts. Principally, Columbus and Ohio laws required awarding the contract to the "lowest, responsive, responsible, and best bidder." *Id.* at 12. The District was under no such obligation; had it been in this Court's situation, the *Columbus* court said it would not have "disturb[ed] a public official's determination that one vendor would be better . . . at providing a public service." *Id.* at 15.

Separately, under Ohio law, "a rejected bidder is limited to injunctive relief," *Columbus* at 20 (citing *Cementech, Inc. v. City of Fairlawn,* 849 N.E.2d 24, 27 (Ohio 2006)). Plaintiff cites no equivalent law here. *Compare* D.C. Code § 2-510 *with* 5 U.S.C. § 702 ("other than money damages"). Further, the *Columbus* court relied on concessions that Columbus had violated the law. *Id.* at 16–17. There is no such concession here.

The *Columbus* decision's reliance on disparate facts—discussed further in III—and inapplicable law mean that it offers no support for Plaintiff's motion.

**III.     The Public Interest and Balance of Equities Are Against Forcing Plaintiff To Remain In the Marketplace from Which Public Policy Finds It Should Be Excluded.**

Plaintiff mistakenly contends that the public interest would not be irreparably harmed by a preliminary injunction here, erroneously relying on the *Columbus* case, discussed immediately above.  Mot. at 30.  But the situations are more different than alike.  In *Columbus,* the prevailing company would not launch operations until two months after a temporary restraining order would have expired, so it would not "lose any business because of a TRO." *Columbus* at 20–21.  The court was also worried "that, absent an injunction, there will be no publicly available e-scooters" for months, *id.* at 21.  Here, as Plaintiff concedes, there are multiple other operators.  *See*, *e.g.*, Compl. ¶ 135 (describing "other shared fleet device companies . . . operating in the District"), Ex. H at 4 ("DDOT awarded four shared fleet device permits to three companies, two for dockless bikes and two for dockless scooters").

Further, this last fact means that Plaintiff asks the Court to threaten the business of the three companies to which the District awarded permits.  *See Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 379 (D.C. Cir. 2021) (describing "the doctrine of competitor standing, which recognizes that economic actors suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition.") (quotation omitted).  The relief Plaintiff seeks would injure those third parties, invite additional litigation, and create additional uncertainty.  Plaintiff should not be allowed to "seek to eliminate the alleged competitive advantage given to the contract carriers simply by engaging in the contract carrier trade themselves." *Cent. & S. Motor Freight Tariff Asso. v. United States*, 757 F.2d 301, 309 (D.C. Cir. 1985).  Plaintiff's requested relief threatens injustice, *see Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 391 (D.D.C. 2017) (if one denied bid protestor is granted relief, "the incumbent concessioners' interests . . . would be impaired or impeded.  Yet, their contractual

rights are being considered without their participation."), and conflicts with the "public interest in avoiding additional litigation," *Cas. Indem. Exch. v. Crete* 731 F.2d 457, 461 n.3 (7th Cir. 1984), especially by injuring others.

## CONCLUSION

Because Plaintiff has failed to meet the high standard for the relief it seeks, the Court should deny Plaintiff's motion.

Date: April 8, 2025.

Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Conrad Z. Risher*
CONRAD Z. RISHER [1044678]
JULIE M. TOLMIE[*]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 417-5394
Email: conrad.risher@dc.gov

*Counsel for the District of Columbia*

---

[*] Counsel is a member in good standing of the Oregon State Bar, authorized by the Office of the Attorney General for the District of Columbia to provide legal services pursuant to Local Civil Rule 83.2(g). Counsel certifies that she is personally familiar with the Local Rules of this Court as well as the other materials set forth in Local Civil Rules 83.8(b) and 83.9(a).